UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEPHEN HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02180-SEB-DML |
| | ) | |
| DAVID MASON, | ) | |
| DUSHAN ZATECKY, | ) | |
| DUANE ALSIP, | ) | |
| MICHAEL CONYERS, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion for Summary Judgment**

Plaintiff Stephen Harvey, Jr., is currently incarcerated within the Indiana Department of Correction. He filed this civil rights action under 42 U.S.C. § 1983 challenging the conditions of his confinement while on lockdown at Pendleton Correctional Facility. Dkt. 2. The defendants seek judgment as a matter of law on Mr. Harvey's claims.[1] Dkt. 52. Their request is granted because the record does not contain evidence that Mr. Harvey was subjected to conditions that denied him the minimal civilized measure of life's necessities while he was on lockdown in December 2018 and January 2019.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no

---

[1] Mr. Harvey's claims relate to three time periods: (1) December 17 to 27, 2018; (2) December 31, 2018, to January 8, 2019; and (3) January 11 to 15, 2019. Dkt. 1. The Court granted the defendants' motion for summary judgment for failure to exhaust administrative remedies on Mr. Harvey's claims arising from December 17 to 27, 2018. Dkt. 33. Thus, the defendants' motion for summary judgment on the merits addresses only the claims from December 31, 2018, to January 8, 2019, and from January 11 to 15, 2019.

1

genuine dispute as to any of the material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for then nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

Mr. Harvey failed to respond to the summary judgment motion. Accordingly, the facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II. Summary Judgment Evidence

### A. Mr. Harvey's Placement in H Cell House

Mr. Harvey has been incarcerated since 2003. Dkt. 52-1 at 9. Although he was recently transferred to Westville Correctional Facility, the Eighth Amendment claim presented in this action is based on the conditions of Mr. Harvey's confinement at Pendleton Correctional Facility. *Id.* at 9-10.

In 2007, Mr. Harvey was placed in the H cell house at Pendleton. *Id.* at 14. He described H cell house as a "discipline cell house" that houses inmates who have been found guilty of disciplinary infractions. *Id.* at 14-17. Although he was originally assigned to H cell house for six months due to a disciplinary infraction, he stayed there until his transfer to Westville because he worked in the kitchen and then as a utility person. *Id.*; *see also id.* at 27-28.

**B. Conditions of Confinement in H Cell House**

H cell house holds 250 to 300 inmates, and each inmate has his own cell. *Id.* at 20-21. Inmates may have their own food, hygiene, hot pot, television, fan, and ice cooler in their cells. *Id.* at 21. They walk to the dining hall for meals, and they have access to commissary. *Id.* at 21-22. They are allowed to shower every day, and they have regular access to the law library, religious services, recreation, visitation, and medical services. *Id.* at 23-26.

These conditions changed, however, whenever H cell house was on lockdown.[2] When on lockdown, inmates remained in their cells 23 to 24 hours a day. *Id.* at 42. They left only if they were going to shower—which they were allowed to do once every three days—or if they had a pass. *Id.* at 42-43, 45. Inmates could not have visitation or attend religious services without a pass, and they could not visit the law library.[3] *Id.* at 59-60, 83. They continued to receive three meals a day, but the meals were often cold from sitting out for multiple hours. *Id.* at 53. Additionally, the meals were handled in an unsanitary manner because prison staff would not wear gloves when delivering the meals. *Id.*

---

[2] There are multiple levels of lockdown, but Mr. Harvey's allegations center around the conditions present when Pendleton was on a full lockdown. Dkt. 52-1 at 56-57.

[3] If an inmate needed legal materials while on lockdown, he had to submit a request and wait for the materials to be delivered to him. Dkt. 52-1 at 50.

If H cell house was on lockdown, Mr. Harvey was not allowed to work and consequently did not get paid. *Id.* at 73. Because his job was to clean the cell house, that responsibility would fall to prison staff, and they would not clean. *Id.* Inmates would throw food and trash onto the range because they were mad, and the mess would remain there until prison staff cleaned. *Id.* at 74-75. Also, if an inmate's toilet broke or the water in his cell stopped working, he could go without water or an operable toilet for hours. *Id.* at 42-43.

Mr. Harvey alleges that the conditions of his confinement in H cell house when on full lockdown violated the Eighth Amendment. *See* dkt. 2. Specifically, he challenges the conditions of his confinement from December 31, 2018, to January 8, 2019, and again from January 11-15, 2019, when H cell house was on full lockdown. *Id.* at 57; *see also* dkts. 52-4, 52-5. He has not, however, presented any evidence about exactly what happened on those days. H cell house was on full lockdown on those 14 days "due to security reasons." Dkt. 52-3 at ¶¶ 14-15.

### III. Analysis

The Eighth Amendment's proscription against cruel and unusual punishment protects inmates from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement—they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up).

To succeed on a conditions-of-confinement claim, a plaintiff must demonstrate that (1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and (2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored

it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

The objective inquiry requires "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, . . . 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional." *Id.* "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). And while the aggregate effect of many individual conditions may violate the Eighth Amendment, "this only occurs when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Giles*, 914 F.3d at 1052.

While it is undisputed that a full lockdown resulted in more restrictive—and harsh— conditions in H cell house, the record does not support a finding that Mr. Harvey was deprived of the minimal civilized measure of life's necessities. Broken plumbing or a lack of access to water may rise to the level of an Eighth Amendment violation. *See Downs v. Carter*, No. 13 C 3998, 2016 WL 1660491, at *7-8 (N.D. Ill. Apr. 27, 2016) (collecting cases). Additionally, unsanitary living conditions and lack of access to adequate cleaning supplies can be serious enough to violate the Eighth Amendment. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

But Mr. Harvey's claim fails because he has presented no evidence that he was subjected to such conditions during the time at issue in this action—December 2018 to January 2019. Nor

has he presented evidence showing how long he went without operable plumbing, access to water, or access to cleaning supplies. Without such evidence, he cannot show a constitutional violation. *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one."); *cf. Gray*, 826 F.3d at 1005 ("An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem.").

The other conditions Mr. Harvey endured while on full lockdown—restricted access to the law library, showers, visitation, and religious services—are not serious enough to make out an Eighth Amendment claim. First, Mr. Harvey has not shown that these conditions relate to life's necessities: adequate shelter, heat, hygiene items, clothing, sanitation, bedding, and utilities. *See Townsend*, 759 F.3d at 687; *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Also, there is no evidence that Mr. Harvey was completely denied these services; instead, he had limited access or an alternative means of access. Mr. Harvey has not established that these conditions "denied him the minimal civilized measure of life's necessities." *Gillis*, 468 F.3d at 491 (internal quotation marks and citation omitted).

One last note: Mr. Harvey has not presented enough evidence to survive summary judgment even if the Court considers "the aggregate effect of a multitude of individual conditions." *Giles*, 914 F.3d at 1052. As noted above, Mr. Harvey has not established that the potentially harsh conditions present when H cell house was on full lockdown occurred in December 2018 or January

2019 or that such conditions resulted in longer than a short-term deprivation. The defendants are entitled to judgment as a matter of law on Mr. Harvey's Eighth Amendment claim.[4]

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [52], is **granted**. Judgment consistent with this Order, the Order granting in part and denying in part the motion for summary judgment on the issue of exhaustion, dkt. [33], and the screening Order, dkt. [8], shall now issue.

**IT IS SO ORDERED.**

Date:       3/9/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

STEPHEN HARVEY
973039
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov

Molly Michelle McCann
INDIANA ATTORNEY GENERAL
mmccann@taylorlitigation.com

---

[4] Because Mr. Harvey has not established a constitutional violation, the Court need not address the defendants' qualified immunity defense. *See Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015) (recognizing first prong of qualified immunity analysis requires determination of whether defendant violated a constitutional right). Additionally, Mr. Harvey's transfer to another facility moots any request for injunctive relief. *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (concluding that plaintiff's claims for prospective relief were moot in light of transfer to a different facility); *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) ("Certainly his demand for injunctive relief became moot, since Jones demanded and got a transfer . . . .").